PROVOSTY, J.
Plaintiff’s son, 19 years old, fell under the wheels of a small flat car loaded with heavy timbers, which he and 17 other men were pushing along upon the railroad bridge of the defendant company that crosses Bay St. Louis, and he died the next day from his injuries; and this suit is brought in damages.
This bridge is an open trestle, the top of which consists of the cross-ties, the two rails, and a plank walk on each side between the ends of the cross-ties and the rails. Beginning where it leaves the land, the grade for about half a mile going out is down, 8 inches to the 100 feet at first, tapering to 5 inches. The men were on each side of the car and back of it. Its platform was hip high to them, and there was sitting room on each side of the load. When it reached the downgrade and began moving of itself, the men let go, and some stood back, while others jumped and sat upon it. Plaintiff’s son was on the side, with men in front and back of him. Whether his fall was caused by his attempting to jump on the car, or by his stumbling, the testimony leaves 'uncertain.
[1] The contention is that the place was unsafe, and that the young man was put to work there without warning of the danger. One of the assigned sources of danger we leave out of consideration, as it played no part in the accident. It is that large spikes stuck out of the plank walk, against which a man might strike his foot and stumble. Plaintiff does not pretend that this is what happened to the young man, as there were no such spikes at the place where he fell; but that he must have struck his foot against a certain so-called guard rail laid upon the cross-ties between the plank walk and the main rail, one end of it touching the rail and the other touching, or nearly so, the plank walk.
This guard rail was 12 feet long, and, when plaintiff’s son fell, he had passed that end of it which stood close to the plank walk, and had reached, or nearly reached, the end touching the main rail. At the latter point there was little, if any, danger of his striking his foot against it.
Besides, it was not as the result of negligence that this guard rail was there, but intentionally, for a useful purpose. Hence whatever danger was created by its presence was only such as men engaged in railroad construction work are encompassed with on every side, and against all of which it is not possible for warning to be given. Such dangers as these are incident to the work, and are assumed by the workmen. The accidents that result from them are due to unavoidable circumstances, and not to the fault of individuals.
[2] The plank walk was only six or eight inches wide; and three cross-pieces of the framework of the car extended out to within an inch or so of it. This tended to increase whatever ¿[anger there might otherwise have been. Even so, however, we do not see what particular danger was presented against which any special warning was called for or could have, been given that would have contributed to avert the accident. No instruction, surely, was needed as to the *463 manner of pushing the car or of letting it go when it began to move of itself and pushing became unnecessary. Counsel argue the case as if the car, on entering upon the slight downgrade, assumed a sudden speed or lurched forward; but such was not the case; the grade was not such as to cause anything of that hind, and no special warning could have been necessary as to the manner of walking on the bridge. In the latter connection, the learned counsel of defendant well observe:
“To take a young man out upon a bridge and point out the rails to him and warn him not to stumble over them would be beyond even paternal care.”
And they add, with a touch of pleasantry which perhaps the baseless character of the suit excuses:
“It would be grandmotherly.”
Judgment affirmed.